**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| **ANDRE MOODY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Cause No. 2:12-cv-367-WTL-WGH** |
| | ) | **2:09-cr-9-WTL-CMM-2** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**ENTRY DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY AND DENYING CERTIFICATE OF APPEALABILITY**

This cause is before the Court on Petitioner Andre Moody's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody. Dkt. No. 1. The motion is fully briefed, and the Court, being duly advised, **DENIES** the motion for the reasons set forth below. The Court also finds that a certificate of appealability should not issue.

## I. BACKGROUND

Law enforcement officials began investigating Moody's methamphetamine trafficking activities in November 2007, after one of Moody's customers, Misty Sutton, began working as a confidential informant. Moody was arrested on November 24, 2007, after detectives initiated a controlled drug buy between Moody and Sutton. Incident to his arrest, a detective searched Moody's phone and identified "G" as a recent caller. At that time, nothing was done with the cell phone information. Moody was ultimately convicted of possession of methamphetamine and sentenced to probation.

Less than two years later, Moody became involved in another methamphetamine trafficking investigation. Using Donald Blair, another one of Moody's customers, as an

informant, law enforcement officials obtained audiotape and videotape of Moody making several drug transactions. The investigation also revealed that Gonzalo Gutierrez was Moody's methamphetamine source. After Moody and Gutierrez were arrested, the DEA subpoenaed cell phone records for the defendants. Investigators ultimately determined "that the telephone number of 'G' . . . found when searching Moody's cell phone after his first arrest in 2007 corresponded to Gutierrez's cell phone number." *United States v. Moody*, 664 F.3d 164, 166 (7th Cir. 2011). This cell phone evidence, along with witness testimony and the audio/video recordings, was introduced by the Government during Moody's jury trial.

On July 21, 2010, the jury convicted Moody of conspiracy to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846 and distribution of five grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Moody was sentenced on December 10, 2010, to 292 months' imprisonment.

Moody appealed his convictions and sentence to the Seventh Circuit arguing that the cell phone evidence obtained after his arrest in 2007, was "the fruit of an illegal search under the Fourth Amendment," and thus, all evidence derived from the initial search of his cell phone should have been suppressed during his trial. *Moody*, 664 F.3d at 167. The appellate court rejected this argument and concluded that, regardless of whether the initial search of Moody's cell phone was illegal, the cell phone evidence was properly admitted under the independent source doctrine.[1] According to the Seventh Circuit, "the evidence recovered in the initial search was ignored until later discovered by an independent source—the subpoenaed cell phone

[1] "[T]he independent source doctrine allows the admission 'of evidence initially discovered during an unlawful search if the evidence was discovered later through a source untainted by the initial illegality.'" *Moody*, 664 F.3d at 167 (quoting *United States v. Gonzalez,* 555 F.3d 579, 581 (7th Cir. 2009)).

records—over two years after the initial search, thus freeing it from any taint that would require its exclusion at trial." *Id.* As a result, Moody's convictions and sentence were affirmed.

Moody now seeks relief from this Court pursuant to 28 U.S.C. § 2255.

## II. STANDARD

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See, e.g., Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief pursuant to § 2255 if a sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose . . ., or that . . . was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The scope of relief available under § 2255 is narrow and limited to "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal citations omitted).

## III. DISCUSSION

Moody argues that his convictions are subject to collateral attack because trial counsel was ineffective. Moody argues generally that counsel's knowledge of the case was lacking because he did not adequately prepare for trial. More specifically, Moody contends that counsel:

1. Failed to discuss trial strategy;
2. Failed to investigate;
3. Failed to effectively cross-examine; and
4. Failed to subject the prosecution's case to a meaningful adversarial testing.

Moody's Br. at 4, Dkt. No. 2.

As an initial matter, "[a] district court cannot reach the merits of an appealable issue in a § 2255 proceeding unless that issue has been raised in a procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). Claims of ineffective assistance of counsel, however, need not be raised on direct appeal and constitute an exception to the general rule of procedural default. *Massaro v. United States*, 538 U.S. 500, 509 (2003). Therefore, Moody need not have raised the issue of ineffective assistance of counsel prior to the instant motion.

With that said, "[t]he Sixth Amendment entitles criminal defendants to the effective assistance of counsel." *Bobby v. Van Hook*, 558 U.S. 4, 16 (2009) (quotations and citations omitted). A petitioner, however, "bears a heavy burden in establishing an ineffective assistance of counsel claim." *Dugan v. United States*, 18 F.3d 460, 463 (7th Cir. 1994) (citations omitted).

"An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). With regard to an attorney's performance, "a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness' . . . [i.e.,] 'reasonableness under prevailing professional norms.'" *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). With respect to the prejudice requirement, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Each of Moody's arguments is discussed below.

### A. Failure to Discuss Trial Strategy

Moody argues that "[c]ounsel never met with [him] to discuss any type of [trial] strategy once the plea agreement process had come and gone." Moody's Br. at 5. Moody, however, fails to show that counsel was ineffective in this respect.

Regardless of whether counsel's discussions with Moody prior to trial were deficient, Moody fails to show that he suffered the requisite prejudice under *Strickland*. Moody identifies several aspects of the case that counsel failed to discuss or review with him: trial strategy generally, CDs containing audiotape and videotape evidence, and individuals identified on the Government's witness list. Moody argues that had counsel discussed these items with him, he would have noted inconsistencies in the witnesses' statements and instructed counsel to ask the witnesses certain questions bearing on their credibility.[2] Assuming for the moment that counsel would have ultimately asked all of Moody's proposed questions and those questions would have cast doubt on the credibility of those witnesses, Moody nevertheless fails to show that the outcome of the trial would have been different. The evidence used to convict Moody was far from circumstantial; there was a "significant amount of audio/video recordings" documenting Moody's drug transactions presented at the trial. *Moody*, 664 F.3d at 168. This type of direct evidence is hard to overcome. As such, counsel was not ineffective in discussing trial strategy with Moody.

---

[2] Moody argues, among other things, that there was "information contained in police narratives that contradicted the events seen on the CDs." Moody's Br. at 5. Moody, however, provides no additional information and fails to describe the specific inconsistencies.

**B. Failure to Investigate or Prepare**

Moody also argues that counsel failed to adequately investigate certain aspects of his case, and counsel's failure to investigate led to counsel's failure to adequately prepare for trial. The Court does not agree.

> When the allegation of the ineffectiveness of counsel centers on a supposed failure to investigate, we cannot see how . . . the petitioner's obligation can be met without a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result. . . . The district court simply cannot fulfill its obligation under *Strickland* to assess prejudice until the petitioner has met his burden of supplying sufficiently precise information.

*United States ex rel. Cross v. DeRobertis*, 811 F.2d 1008, 1016 (7th Cir. 1987) (citation omitted).

Moody identifies several areas of the case he believes counsel should have, but failed to investigate. Specifically, counsel did not investigate "exculpatory evidence" surrounding his 2007 arrest,[3] the credibility of the Government's witnesses,[4] and inconsistencies in the witnesses' statements.[5] Moody also argues that "counsel failed to introduce a comparatively voluminous

---

[3] According to Moody, Blair was questioned after Moody's arrest in 2007, and Blair stated that he had no knowledge of Moody's involvement with drugs at that time. Moody also argues that there was evidence that "would have shed a different light on the . . . evidence presented by the government and more importantly the petitioner's action and/or intent at the time of the 2007 alleged crime." Moody's Reply at 10, Dkt. No. 11. Moody does not elaborate on what this "evidence" is.

[4] Moody submits several questions he believes counsel should have asked Sutton and Officer Rogers related to their background and their knowledge of Moody's drug trafficking, but he does not articulate what he expects their answers would have been or how these answers would have impacted the trial.

[5] Moody claims that "[t]here was testimony given by [him] . . . of the events that surrounded his arrest and subsequent conviction and they differ from that of testimony given by Officer Rogers and Misty Sutton." Moody's Br. at 7-8. Moody also argues that Officer Lewis' testimony before the grand jury was different from the information contained in his police narratives. Moody further claims that the video evidence conflicted with Blair's testimony. Specifically, Moody argues that the video shows Blair giving Moody $120.00 and that the

amount of evidence in the petitioner's favor."[6] Moody Br. at 8. Yet Moody provides no support for these arguments. In other words, Moody fails to identify the specific inconsistences in the witnesses' statements or the substance of the "voluminous" evidence in his favor.

Moreover, the "exculpatory evidence" cited by Moody and the credibility issues he alleges do not outweigh the substantial audiotape and videotape evidence supporting his conviction. Therefore, Moody has not shown that counsel's failure to investigate prejudiced his defense. Accordingly, counsel was not ineffective in failing to investigate or prepare for trial.

### C. Failure to Effectively Cross-Examine

Next, Moody argues that counsel failed to effectively cross-examine the Government's witnesses; specifically, Officer Rogers, Officer Lewis, Sutton, and Blair. Moody, however, fails to show that counsel's performance was deficient or prejudicial.

As noted above, "a defendant has a burden of supplying sufficiently precise information, of the evidence that would have been obtained had his counsel undertaken the desired investigation, and of showing whether such information . . . would have produced a different result." *United States v. Rodriguez*, 53 F.3d 1439, 1449 (7th Cir. 1995) (quoting *United States v. Kamel*, 965 F.2d 484, 499 n. 45 (7th Cir. 1992)) (citation and quotations omitted). In *Rodriguez*, the Seventh Circuit analyzed whether defense counsel's cross-examination of a witness was deficient. In that case, the court concluded that the petitioner had "explained neither what [the witness's] responses to further cross-examination might have revealed nor how those responses

---

money was for "purchases." Blair, however, testified that he gave Moody $200.00 in drug proceeds.

[6] Moody also claims that "there was exculpatory evidence [Brady Material] in the form of sworn testimony." Moody's Reply at 3.

might have affected the result" of the trial. 53 F.3d at 1449. Thus, the petitioner failed to establish that counsel was ineffective.

Here, Moody claims that counsel's performance was deficient because his cross-examination of Sutton "was noted as being confusing to all parties," counsel was "blind-sided by the events of petitioners 2007 arrest," counsel reinforced the testimony of Blair and Sutton, and counsel relied mostly on the questions prepared by Moody when he cross-examined the Government's witnesses. Moody's Br. at 10-11. Moody's arguments, however, stop short of the requisite showing. He does not articulate how counsel's cross-examination should have been different. More importantly, Moody fails to explain what further, or different, cross-examination might have revealed, or how that information would have affected his trial. Thus, Moody fails to make the requisite showing under *Strickland*. As such, counsel was not ineffective with regard to his cross-examination of the Government's witnesses.

**D. Failure to Subject the Case to Meaningful Adversarial Testing**

Lastly, Moody argues that counsel failed to subject the prosecution's case to a meaningful adversarial testing. Generally, claims of ineffective assistance of counsel are evaluated under the *Strickland* analysis. However, in *United States v. Cronic*, 466 U.S. 648 (1984), which was decided the same day as *Strickland,* the Supreme Court

> defined three exceptions to *Strickland* where it is appropriate for a court to presume prejudice: (1) where there is a "complete denial of counsel" or denial at a "critical stage" of the litigation; (2) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) where "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is [very] small.

*McDowell v. Kingston*, 497 F.3d 757, 761-62 (7th Cir. 2007) (citing *Cronic*, 466 U.S. at 659-60). The Supreme Court has since "clarified what constitutes an 'entire failure' by drawing a clear

distinction between a failure to oppose the prosecution throughout an entire proceeding and a failure to do so at specific points, concluding that a failure at specific points will not trigger a presumption of prejudice." *McDowell*, 497 F.3d at 793 (citing *Bell v. Cone*, 535 U.S. 685, 697-98 (2002)). Where counsel's failures relate to specific aspects of a case, a petitioner's claims should be reviewed under the *Strickland* framework. *Bell*, 535 U.S. at 696.

For the most part, Moody revisits his prior arguments to support his contention that counsel failed to subject his case to a meaningful adversarial testing. For example, Moody argues:

- There was evidence on the CDs that was different from what was in the police narratives and the officers' grand jury testimony.

- The CDs were never viewed with Moody "to at least rule out what petitioner felt would have been adversarial testing." Moody's Br. at 11.

- "Counsel failed to bring the testimony of Misty Sutton under adversarial testing because counsel failed to give credence to . . . the fact that narratives by Rogers and other officers . . . differed from the testimony given by Sutton during direct." *Id.* at 12.

- "Counsel never subjected Blair's testimony to the adversarial testing process when he failed to bring Blair's credibility under scrutiny." *Id.*

- "Counsel's cross-examination of government witnesses [Officer] Lewis, [Officer] Rogers, Sutton, and Blair was deficient and failed the adversarial testing process because counsel was not aware of the totality of the evidence before him, counsel did not consult with petitioner, [and] no investigation was conducted." *Id.*

- "Counsel's opening statement said that the government's case was full of gaps, but never mounted a defense that would expose those gaps." *Id.*

- "Counsel was given information and questions by petitioner that would undermine the credibility of the investigation and testimony given." *Id.* at 13.

Moody's arguments clearly relate to counsel's performance during specific points of the proceedings and do not indicate that counsel failed entirely to oppose the prosecution during a specific proceeding. Thus, Moody's claims must be evaluated under the *Strickland* analysis.

However, as has already been discussed above, the foregoing arguments are insufficient. On the whole, Moody fails to support his arguments with detailed evidence and thus fails to show that counsel's performance with respect to these issues was deficient or that he suffered prejudice, as required by *Strickland*. Accordingly, counsel was not ineffective in these respects.

## IV. CONCLUSION

For the foregoing reasons, Moody's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody is **DENIED**.

## V. CERTIFICATE OF APPEALABILITY

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 proceedings, and 28 U.S.C. § 2253(c), the Court finds that Moody has failed to show that (1) reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore **DENIES** a certificate of appealability.

SO ORDERED: 08/23/2013

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

**Copy by U.S. Mail to:**

**Andre Moody**
**09230-028**
**Lexington Federal Medical Center**
**Inmate Mail/Parcels**
**P.O. Box 14500**
**Lexington, KY 40512**

Copies to all counsel of record via electronic communication.